UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

In re:

                                        Case No.: 09-70124-reg

St. James Mechanical, Inc.,

                                        Chapter 11

                Debtor.

-------------------------------------------------------------X

### *Memorandum Decision*

In this Chapter 11 case, ITT Sheraton Corporation ("ITT"), listed in the bankruptcy

schedules of St. James Mechanical, Inc. (the "Debtor") as holding a contingent, unliquidated and

disputed claim, has filed a motion seeking to enlarge its time to file a proof of claim pursuant to

Fed. R. Bankr. P. 9006(b) ("Motion") on the basis that its failure to timely file the claim was the

result of "excusable neglect." In the alternative, ITT seeks to have the notice of appointment of

the Committee of Unsecured Creditors ("Creditors Committee") filed by the Office of the United

States Trustee ("Notice of Appointment") be deemed a timely filed proof of claim on ITT's

behalf. The Motion was made after the Debtor's second amended plan of reorganization ("Plan")

was confirmed. The Court finds that upon entry of the order confirming the Plan, ITT no longer

had a prepetition claim against the Debtor because it was discharged pursuant to 11 U.S.C. §

1141(d)(1)(A). As a result of the discharge of its claim, there is no basis for ITT to seek an

extension of time to file a claim under Rule 9006(b). The only exception to the discharge granted

under section 1141(d)(1)(A) is where a creditor did not receive proper notice of a debtor's case  in

a violation of the creditor's due process rights, which is not alleged by ITT. As to ITT's alternate

position, the Court finds that no informal proof of claim was filed on behalf of ITT. Notwithstanding the denial of the Motion, ITT is entitled to receive the treatment provided to it under the Plan. Pursuant to Bankruptcy Code § 1141(a), the Debtor and all of its creditors, including ITT, are bound by the terms of the Plan.

### *Facts*

The Debtor was the general contractor for an air conditioning installation project at ITT's New York Sheraton Hotel. Pursuant to a work contract between the Debtor and ITT, the Debtor was obligated to indemnify ITT for any claims or lawsuits arising out of the work of the Debtor or its subcontractors. A worker was injured at the site and filed suit against ITT and the Debtor in New York State Supreme Court, Queens County, under New York Labor Law Sections 200, 240, and 241(6). ITT settled the suit with the worker for $1 million. Subsequently a judgment was entered on September 26, 2008 in favor of ITT against the Debtor in the amount of $1 million plus interest on the basis of the Debtor's contractual indemnification of ITT. The Debtor appealed the decision.

In reaction to the aforementioned suit, the Debtor sought to obtain coverage from its general liability carrier, Arrowood Indemnity Company, formerly known as Royal Indemnity Company, successor in interest to Globe Indemnity Company ("Arrowood"), for any liability imposed against the Debtor. Arrowood disclaimed coverage and the Debtor subsequently brought a declaratory judgment action against Arrowood in New York State Supreme Court, Suffolk County to compel Arrowood to cover the claim held by ITT ("Declaratory Judgment Action").

On January 8, 2009, ITT demanded payment on its judgment against the Debtor. On January 9, 2009, the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code and subsequently removed the Declaratory Judgment Action from Suffolk

County Supreme Court to this Court. In the petition, the Debtor schedules ITT as having a contingent, unliquidated and disputed unsecured claim for $1 million.  ITT received notice of the filing and all other notices generated by the Bankruptcy Court with respect to the Debtor's case. ITT was also served with notice of the Court's order fixing March 16, 2009 as the last date for filing proofs of claim in the Debtor's case ("Bar Date").  On March 4, 2009, the Notice of Appointment was filed by the Office of the United States Trustee.  The Notice of Appointment lists ITT as a member of the Creditors Committee, and lists ITT as having filed with the Office of the United States Trustee an acceptance form.  The Notice of Appointment includes a description of ITT's claim as "Trade/Judgment" in the amount of $1.3 million.

During the course of  the bankruptcy proceedings. ITT attended multiple court conferences, appeared at oral argument in the adversary proceeding, and communicated with Debtor's counsel on the proposed plan of reorganization. ITT actively participated in the Debtor's appeal of the September 2008 order.  Ultimately, the Appellate Division affirmed the September 2008 order.  ITT was included in the Plan as a class 3 general unsecured claim holder despite never having filed a proof of claim.  The Debtor served ITT with a ballot, included ITT's ballot in favor of the Plan, and certified to the Court that ITT was entitled to vote on the Plan.  A total of six  ballots were received from class 3 creditors, and all voted in favor of the Plan.

At the hearing on confirmation of the Plan, the Debtor made all of the representations required by Bankruptcy Code Section 1129, and the Plan was confirmed on May 17, 2010.  ITT raised no objections to confirmation of the Plan.  No appeal was taken from the order confirming the Plan. The Plan provides for treatment of ITT's allowed claim only if the Debtor is unsuccessful in the Declaratory Judgment Action.  By Memorandum Decision dated August 9, 2010, the Court has ruled in favor of Arrowood in the Declaratory Judgment Action.  Therefore

the Debtor remains obligated to ITT, and ITT's claim will constitute $1.3 million of the entire class of approximately $1.881 million. The outcome of the Declaratory Judgment Action has a material impact on the remaining unsecured creditors under the Plan. The creditors in this class will now receive a distribution of approximately 22% of their respective claims, instead of a distribution in the amount of approximately 75%.

Post-confirmation, in the context of reviewing cross-motions for summary judgment in the Declaratory Judgment Action, the Court discovered that ITT had failed to file a timely proof of claim in the main case prior to the Bar Date. By its own Order to Show Cause dated June 11, 2010, the Court directed the parties to submit briefs on whether ITT, having never filed a proof of claim in the case, was nevertheless entitled to receive a distribution under the Plan, and if they were not, why the Declaratory Judgment Action should not be dismissed as moot. Arrowood submitted a memorandum of law on June 24, 2010, wherein it asserts that because ITT did not file a timely proof of claim in the case, ITT is not entitled to participate as a creditor in any distribution under the Plan. Arrowood further argues that since ITT has no right to receive any distribution under the Plan, the Declaratory Judgment Action should be dismissed as moot. The Debtor has chosen to file no papers in response to the Court's Order to Show Cause.

ITT submitted a supplemental brief in response to the Court's Order to Show Cause, and a motion to extend its time to file a proof of claim pursuant to Bankruptcy Rules 3003(c) and 9006(b). ITT alleges that its failure to file a timely proof of claim was the result of the inadequate efforts of a paralegal formerly employed by its law firm, Melito & Adolfsen P.C. ("M&A"). According to ITT's papers, the paralegal was delegated the responsibility of filing the proof of claim prior to the Bar Date. Time sheets submitted to the Court show that on four different dates prior to the Bar Date she attempted to file the proof of claim both in person with the Court Clerk

and through the Court's ECF system. She also apparently contacted the Bankruptcy Court for the District of New Jersey for assistance. The paralegal's attempts to file the proof of claim were unsuccessful. M&A failed to realize that ITT's approximately $1.3 million proof of claim had never been filed. ITT argues that the conduct of M&A constitutes "excusable neglect" as required under Bankruptcy Rule 9006(b), therefore giving the Court the grounds for extending ITT's time to file its proof of claim. ITT further argues that such a late filing will neither affect implementation of the Plan nor substantively impact the Declaratory Judgment Action because ITT's claim was included in the Plan. In the alternative, ITT asserts in the alternative that an informal claim was filed on its behalf upon the filing of the Notice of Appointment, which lists ITT as a member of the Creditors Committee.  On August 3, 2010, Arrowood filed an objection to the Motion, asserting that ITT's conduct did not constitute "excusable neglect" and that the Notice of Appointment did not constitute an informal claim on behalf of ITT because it failed to identify the nature, dollar amount and classification of ITT's claim.  On August 6, 2010, ITT filed another brief in support of its Motion.  However, the papers filed by ITT and Arrowood fail to address one relevant issue the Court must decide; whether ITT is entitled to receive any distribution under the Plan.

*Discussion*

**1. ITT's Motion to File a Late Proof of Claim**

Federal Rule of Bankruptcy Procedure 3003(c) governs the filing of a proof of claim in a Chapter 11 case and provides in part:

(c) Filing of proof of claim

(1) Who may file

Any creditor or indenture trustee may file a proof of claim within the time prescribed by subdivision (c)(3) of this rule.

(2) Who must file

> Any creditor or equity security holder whose claim or interest is not scheduled or scheduled as disputed, contingent, or unliquidated shall file a proof of claim or interest within the time prescribed by subdivision (c)(3) of this rule; any creditor who fails to do so shall not be treated as a creditor with respect to such claim for the purposes of voting and distribution.

(3) Time for filing

> The court shall fix and for cause shown may extend the time within which proofs of claim or interest may be filed. Notwithstanding the expiration of such time, a proof of claim may be filed to the extent and under the conditions stated in Rule 3002(c)(2), (c)(3), (c)(4), and (c)(6).

Fed. R. Bankr. P. 3003(c).

Subsection (c)(3) to the Rule directs the court to set a bar date within which proofs of claim may be filed and allows extensions "for cause shown." *Id.* A bar date does not operate "merely as a procedural gauntlet." *In re Hooker Investments, Inc.*, 937 F.2d 833, 840 (2d Cir. 1991) (quoting *In re Kolstad*, 928 F.2d 171, 174 (5th Cir. 1991)). Rather, bar dates are "critically important to the administration of a successful Chapter11 case, and the reorganization process." *In re Musicland Holding Corp.*, 356 B.R. 603, 607 (Bankr. S.D.N.Y. 2006). Like statutes of limitations, they "must be strictly observed." *Id.* (citing *In re Macmillan, Inc.,* 186 B.R. 35, 49 (Bankr. S.D.N.Y. 1995)).

Rule 9006(b) governs the extension of applicable time periods in bankruptcy and construes "for cause shown," stating in part:

(b) Enlargement

(1) In general

> Except as provided in paragraphs (2) and (3) of this subdivision, when an act is required or allowed to be done at or within a specified period by these rules or by a notice given thereunder or by order of court, the

> court for cause shown may at any time in its discretion (1) with or
> without motion or notice order the period enlarged if the request
> therefor is made before the expiration of the period originally
> prescribed or as extended by a previous order or (2) on motion made
> after the expiration of the specified period permit the act to be done
> where the failure to act was the result of *excusable neglect.*

Fed. R. Bankr. P. 9006(b)(1) (emphasis added).

Based upon this statutory framework, after the expiration of a court-ordered bar date, a

bankruptcy court may extend the time period within which a creditor may file its proof of claim if

its failure to timely file was the result of "excusable neglect." *Id.*

In *Pioneer Investment Services Co. v. Brunswick Associates L.P.*, 507 U.S. 380 (1993), the

United States Supreme Court articulated a standard for analyzing excusable neglect in the context

of a creditor's pre-confirmation motion to extend the bar date for filing proofs of claim pursuant

to Rule 9006(b)(1). The Court determined that based upon the bankruptcy courts' broad equitable

powers in ensuring successful reorganizations and preventing creditor forfeiture, "the 'excusable

neglect' standard of Rule 9006(b)(1) is not limited to situations where the failure to timely file is

due to circumstances beyond the control of the filer." *Id.* at 389-91. Rather, "Congress plainly

contemplated that the courts would be permitted, where appropriate, to accept late filings caused

by inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the

party's control." *Id.* at 388. Despite this "flexible understanding of 'excusable neglect,'" the Court

made clear that "inadvertence, ignorance of the rules, or mistakes construing the rules do not

usually constitute 'excusable neglect.'" *Id.* at 389-92. The Court concluded that "the

determination [under Rule 9006(b)(1)] is at bottom an equitable one, taking account of all

relevant circumstances surrounding the party's omission." *Id.* at 395. These circumstances include

"[1] the danger of prejudice to the debtor, [2] the length of the delay and its potential impact on

judicial proceedings, [3] the reason for the delay, including whether it was within the reasonable control of the movant, and [4] whether the movant acted in good faith." *Id.*

The Second Circuit has "taken a hard line" in applying the standard articulated in *Pioneer*. *Silivanch v. Celebrity Cruises, Inc.*, 333 F.3d 355, 368 (2d Cir. 2003). *See In re Enron Corp.*, 419 F.3d 115 (2d Cir. 2005); *In re Lehman Brothers Holdings Inc.*, 2010 WL 2000326 (Bankr. S.D.N.Y. May 20, 2010). The Second Circuit's analysis focuses heavily on the third factor: "the reason for the delay, including whether it was within the reasonable control of the movant." *See Silivanch,* 333 F.3d at 366 (quoting *Pioneer*, 507 U.S. at 395).  It has been repeatedly acknowledged in the Second Circuit that "the equities will rarely if ever favor a party who "'fail[s] to follow the clear dictates of a court rule'" and "where 'the rule is entirely clear … a party claiming excusable neglect will, in the ordinary course, lose under the *Pioneer* test.'" *Silivanch*, 333 F.3d at 366-67 (quoting *Canfield v. Van Atta Buick/GMC Truck Inc*., 127 F.3d 248, 250-51 (2d Cir. 1997)); *In re Enron*, 419 F.3d at 123; *In re Lehman Brothers*, 2010 WL 2000326, at *2.

The Court recognizes ITT's detailed briefing on the issues raised by the Motion, but the Court need not determine whether ITT has satisfied the Second Circuit's exacting standard for finding excusable neglect.  Simply put, ITT has missed the critical issue and failed to consider the effect of a confirmed plan of reorganization on a pre-petition claim.  The facts presented in this case require an analysis of the  threshold issue as to  whether ITT has a "claim" to file. Section 1141(d)(1)(A)(I) of the Code clearly provides:

> Except as otherwise provided in this subsection, in the plan, or in the order confirming the plan, the confirmation of a plan – discharges the debtor from any debt that arose before the date of such confirmation … whether or not – a proof of the claim based on such debt is filed or deemed filed under section 501 of this title.

11 U.S.C. § 1141(d)(1)(A)(I) (2006).

Confirmation of a debtor's plan of reorganization is the seminal event in the Chapter 11 bankruptcy process. The entry of a final order of confirmation discharges the debtor of its prepetition obligations to a creditor whether or not a proof of claim has been filed. The United States Supreme Court recognized the consequential effect of plan confirmation in Chapter 11 cases, remarking that "[u]nder the Bankruptcy Code, a proof of claim must be presented to the Bankruptcy Court for administration or be lost when a plan of reorganization is confirmed." *NLRB v. Bildisco and Bildisco*, 465 U.S. 513, 529 (1984) (citing 11 U.S.C. § 1141). If creditors have "'been given notice [of a bar date] sufficient to satisfy due process,'" their pre-petition claims are supplanted by the new contractual obligations reflected in the plan, which obligations are binding on the debtor and all creditors. *DePippo v. Kmart Corp.*, 335 B.R. 290, 295 (S.D.N.Y. 2005) (quoting *Daewoo Int'l (America) Corp. Creditor Trust v. SSTS America Corp.*, No. 02Civ.9629, 2003 WL 21355214 at *3 (S.D.N.Y. June 11, 2003)). The discharge granted under Bankruptcy Code Section 1141 applies to all creditors whether or not they have filed a proof of claim in the case and the prepetition claims of these creditors no longer remain as obligations of the debtor, except in limited circumstances not applicable to this case.

Rule 9006 cannot be read in isolation of the other sections of the Code, and "[t]he Court must read the Bankruptcy Code as a whole, taking care that it does not construe any provision 'in a manner that would place it in conflict with other provisions.'" *In re Enron Corp.*, 379 B.R. 425, 432 (Bankr. S.D.N.Y. 2007) (quoting *In re Smart World Techs., LLC,* 423 F.3d 166, 183 (2d Cir. 2005) (citing *Auburn Hous. Auth. v. Martinez*, 277 F.3d 138, 144 (2d Cir. 2002))). Because of the post-confirmation discharge granted by section 1141, a creditor, who has received notice which satisfies the due process requirements imposed by the Constitution, can no longer be viewed as

having a claim.  It is axiomatic that a creditor cannot rely upon Rule 9006(b)(1) to extend the time period within which to file a proof of claim if that creditor no longer has an enforceable claim to assert against the debtor.  The language "at any time" in Rule 9006(b)(1) denotes any time during which a creditor holds an enforceable claim against the debtor. Post-confirmation, a creditor has no claim against the debtor.  A court may not resurrect through the use of Rule 9006 that which no longer exists by operation of Bankruptcy Code § 1141.

The Court is aware of decisions  in other jurisdictions which have relied on the expansive language of Rule 9006(b) and the "excusable neglect" standard to grant requests by creditors to file  late proofs of claim post-confirmation.  In *In re National Steel Corp.,* the Bankruptcy Court for the Northern District of Illinois, Eastern District, ruled on a shareholder's post-confirmation motion to file a  proof of claim against Chapter 11 debtors pursuant to Rule 9006(b)(1) and employed *Pioneer's* analysis of "excusable neglect." *In re National Steel Corp*., 316 B.R. 510 (Bankr. N.D. Ill. 2004). The court denied the motion but also rejected the "argument that the Plan confirmation order bars any late-filed claim even if deemed to have resulted from 'excusable neglect' under *Pioneer* and Bankruptcy Rule 9006(b)(1)." *Id.* at 521.  While the court recognized that plan confirmation in general operated as *res judicata* to bar the allowance of late filed claims, the court reasoned that such claims could be allowed based on equitable considerations, such as where due process rights were at issue.   To hold otherwise would, according to the *In re National Steel Corp.* court, "wholly undermine the very purpose behind Bankruptcy Rule 9006." *Id.* While this Court agrees that confirmation of a plan would not discharge a creditor's claim if the creditor's due process rights were violated, it does not follow that the remedy for such a creditor is to allow the creditor to file a claim under Rule 9006(b).[1]  Furthermore, recognizing that a claim

---

[1]Allowance of a claim post-confirmation would also raise a host of issues not raised by the facts of this case, such as whether the plan should be amended to include such claim and

no longer exists and therefore Rule 9006(b) is inapplicable does not undermine the purpose of Rule 9006(b), which is to give creditors holding enforceable claims against a debtor an avenue to file a claim after the bar date has passed.

Other courts have also applied Rule 9006(b)(1) and the *Pioneer* test to determine whether a creditor may file a proof of claim post-confirmation. *See In re O'Shaughnessy,* 252 B.R. 722 (Bankr. N.D. Ill. 2004); *In re 50-Off Stores, Inc.,* 220 B.R. 897 (Bankr. W.D. Tex. 1998); *In re Pettibone Corp.*, 162 B.R. 791 (Bankr. N.D. Ill. 1994). In each of these cases, the courts have granted such relief only in the limited circumstances where the creditor's due process rights were violated.  However, the fact that a creditor did not receive proper notice of the bar date does not give the creditor the right to file a claim post-confirmation. Rule 9006 is the incorrect vehicle by which to provide relief to such creditor.   The correct remedy for such creditor is to treat the discharge as having no effect against the creditor's claim.   "An elemental component of constitutional due process … is the right to receive reasonable notice." *In re Pettibone,* 162 B.R. at 807-08 (citing *Pettibone v. Payne,* 151 B.R. 166) (Bankr. N.D. Ill. 1993).  It is undisputed that "[a] confirmation order cannot act to discharge and enjoin a claim unless the claimant has received adequate notice of the bankruptcy proceeding and any of the claims bar dates fixed therein." *Id.* at 808 (citing *In re Longardner and Assocs., Inc.*, 855 F.2d 455, 465 (7th Cir. 1988), *cert. denied*, 493 U.S. 1015 (1989) (citing *Mullane v. Cent. Hanover Bank and Trust Co.*, 339 U.S. 306, 313-314 (1950))). *See In re CareMatrix Corp.*, 306 B.R. 478, 486 (Bankr. D. Del. 2004) ("[W]hen a creditor does not receive adequate notice, the creditor is not bound by the confirmation order."); *Reliable Elec. Co. v. Olson Constr. Co.*,726 F.2d 620, 623 (10th Cir. 1984) ("[N]otwithstanding the language of section 1141, the discharge of a claim without reasonable

whether the debtor would need to re-solicit the creditors in each class.

notice of the confirmation hearing is violative of the [F]ifth [A]mendment to the United States Constitution.").

If a creditor is not bound by section 1141's discharge, that creditor retains all of his pre-petition rights against the debtor. Courts that allow unnoticed creditors to assert those rights in the form of a late-filed claim pursuant to Rule 9006(b)(1) and partake in an already-confirmed plan to which they are not a party ignore the fact that a confirmed plan "operates as res judicata to bar the allowance of any late-filed claims." *In re O'Shaughnessy,* 252 B.R. 722 at 732 (citing 11 U.S.C. § 1141). *See In re 50-Off Stores, Inc.,* 220 B.R. 897 (Bankr. W.D. Tex. 1998). Once creditors have voted and the plan has been confirmed, Rule 9006 cannot undo this complex process. Rather, a creditor whose claim is not subject to discharge has the option to obtain modification of the debtor's confirmed plan prior to substantial consummation pursuant to section 1127(b) through motion by the plan proponent, so long as such modification comports with the requirements of section 1122 and 1123 of the Code. 11 U.S.C. § 1127(b). He may also seek to exercise his rights in a non-bankruptcy forum.

ITT acknowledges receiving adequate notice of the Debtor's bankruptcy and that it timely received the bar order. ITT has been an active participant throughout the Debtor's bankruptcy. Despite this, ITT admits that it failed to file its proof of claim.As of the date of ITT's motion the Plan has been confirmed and a final order of confirmation has been entered  For the foregoing reasons, ITT's motion to extend the time period within which it may file a proof of claim pursuant to Rule 9006(b)(1) is denied.

ITT's request to have its claim allowed as an amendment to an alleged informal proof of claim previously filed by ITT is denied as well.  In order to constitute an informal proof of claim, the document "must have been 1) timely filed with the bankruptcy court and become part of the

judicial record, 2) state the existence and the nature of the debt, 3) state the amount of the claim against the estate, and 4) evidence the creditor's intent to hold the debtor liable with the debt." *In re Houbigant, Inc.*, 190 B.R. 185, 187 (Bankr S.D.N.Y. 1995).  In sum, "the timely written assertion or pleading must apprise the court of the existence, nature and amount of the claim as well as evidence an intent on the part of the claimant to hold the debtor liable for that claim".  *In re W.T. Grant Co, 53 B.R. 417, 421* (Bankr. S.D.N.Y. 1985).

        The Notice of Appointment relied on by ITT falls short of these requirements.  The Notice of Appointment was filed by the Office of the United States Trustee, not ITT, and does not evidence an intent by ITT to hold the Debtor liable for a claim.  Without such intent evidenced in a document filed with the Court, no informal claim can be found to exist.  *Id.* at 422 (other citations omitted).  Furthermore, ITT's conduct in the case contradicts any assertion that the Notice of Appointment was intended to constitute an informal claim.  ITT attempted on several occasions to file a proof of claim in the case, and never relied on the Notice of Appointment as an informal claim until the Court filed the Order to Show Cause.  Furthermore, the information in the Notice of Appointment  is not specific enough to constitute an informal claim.  Although it is clear from the Notice of Appointment that the Debtor listed ITT's claim as contingent, unliquidated and disputed, it is not clear what the other information on the form means.  It may represent the United States Trustee's opinion regarding ITT's claim and it may not.  Therefore, ITT's request to have the Notice of Appointment deemed an informal claim is denied.

## 2. Effect of the Confirmed Plan on ITT's Pre-Petition Claim

        Despite the fact that ITT no longer has a claim and therefore Rule 9006 is no longer applicable, and despite this Court's determination that it did not file an informal proof of claim prior to the Bar Date, all is not lost for ITT.  ITT's rights are now fixed and set forth in the

confirmed Plan, which is a binding agreement among the Debtor, ITT, and the other creditors of

the Debtor.  In addition to discharging the Debtor from any pre-petition debt, §1141 provides:

> the provisions of a confirmed plan bind the debtor . . . and any creditor, equity security
> holder, or general partner in the debtor, whether or not the claim or interest of such
> creditor, equity security holder, or general partner is impaired under the plan and
> whether or not such creditor, equity security holder, or general partner has accepted the
> plan.

11 U.S.C. §1141(a). *See In re Chatanooga Wholesale Antiques, Inc v Rossville Bank,* 930 F.2d

458 (6th Cir 1991). ("The effect of confirmation under the plain language of §1141(a) is to bind all

parties to the terms of a plan of reorganization")(Citing 5 L. King, Collier on Bankruptcy,

p1141.01[1] 15th Ed. (1990)). The parties must honor the terms of the plan even if it contains legal

errors and confirmation was improper. *United Student Aid Funds, Inc. v. Espinosa* 130 S.Ct.

1367, 1380 (2010).

Arrowood argues that ITT has no right to receive any distribution under the

Plan, despite the fact its claim is described as an "allowed" claim and ITT is scheduled to receive

payments under the Plan.  According to Arrowood, ITT's inclusion in the Plan runs afoul of

Bankruptcy Rule 3003(c)(2), which states that any creditor who fails to file a timely claim "shall

not be treated as a creditor with respect to such claim for the purposes of voting and distribution."

 If Arrowood's argument is correct, then the Plan is void as to its treatment of ITT's claim, and

ITT may not receive any distribution under the Plan.[2]

Arrowood's  reasoning was rejected by the Supreme Court in *United Student Aid Funds v.*

*Espinosa,* 130 S. Ct.1367, 176 LED.2d 158 (2010) ("*Espinosa*").  In *Espinosa*, the Supreme Court

resolved whether a Chapter 13 plan, which contained treatment of a creditor's claim that was

---

[2]Arrowood does not address whether the balloting in this case is affected as well, which
could call into question the entire confirmation process in this case.  The Court need not consider
this issue because even if ITT's ballot were excluded, the affirmative vote of the class 3 creditors
as a class would not have changed.

directly at odds with the creditor's rights under the Code, was void and unenforceable pursuant to Federal Rule of Civil Procedure 60(b)(4). The Chapter13 debtor filed a  plan that proposed to repay only the principle of the debtor's student loan debt; the accrued interest was to be discharged upon completion of the plan. *Id.* at 1375. These provisions violated 11 U.S.C. §§523(a)(8) and 1328, which state that such loans cannot be discharged unless the debtor commences an adversary proceeding and the court finds that repayment of the loans would impose an "undue hardship" on the debtor and the debtor's dependents. 11 U.S.C. §523(a)(8); *Espinosa* at 1380-1381. The debtor did not bring such an adversary proceeding against United Student Aid Funds ("United") and consequently the Bankruptcy Court did not make a finding of "undue hardship" prior to confirmation. United was served with the proposed plan and did not object to its treatment prior to confirmation. No appeal was taken from the order confirming the Chapter 13 plan, and the student loan debt was discharged after the debtor completed the last plan payment.  *Id.* at 1374.

The Supreme Court was asked to determine whether the order confirming the plan could be challenged as void under the theories that either the Bankruptcy Court lacked statutory authority to confirm the plan with its errors, or that United's due process rights were violated because no adversary proceeding was commenced to modify United's rights.  The Supreme Court found no jurisdictional defects which would warrant relief under Rule 60(b)(4).  The Court recognized that the plan should not have been confirmed and that "the Bankruptcy Court's failure to find undue hardship [prior to discharging any portion of the student loan debt] was a legal error." *Id.* at 1380-1381. Nonetheless, the Supreme Court held that the order confirming the plan was enforceable and binding on United "because United had notice of the error and failed to object or timely appeal." *Id.* at 1380.  In sum, confirmation of the Chapter 13 plan foreclosed

United from challenging its treatment under the plan, whether or not the treatment complies with the Code, and even if the plan contained legal errors. The Supreme Court clarified that a confirmed plan is binding on all creditors and parties in interest, provided that parties were given adequate notice of the plan as required by the Due Process clause of the Constitution. *Id.* at 1380. Based on the Supreme Court's reasoning in *Espinosa*, the proper procedure for a creditor to challenge an order confirming a plan is to file a direct appeal. There is no authority for a collateral attack of a plan once it is confirmed.[3]

In this case, as in *Espinosa*, the Plan contained provisions which should have prevented its confirmation. ITT was required to file a claim or else it was not entitled to be treated as a creditor. Since ITT failed to file a timely proof of claim, the Debtor should not have included ITT as a creditor and the Debtor should not have served ITT with a ballot or accepted any vote on confirmation by ITT, pursuant to Rule 3003(c)(2) and Bankruptcy Code §1126(a). However, the Debtor included ITT in the Plan and confirmation process, and once the order confirming the Plan was entered, absent appeal of that order, ITT's rights are fixed.

The Supreme Court reached a similar conclusion with respect to the binding effect of a Chapter 11 plan in *Travelers Indemnity Co. v. Bailey* 129 S.Ct. 2195, 2205, 174 L. Ed. 2d 99 (2009). In *Travelers*, plaintiffs challenged a post-confirmation clarifying order on the basis that the original order was entered into improperly. The Bankruptcy Court for the Southern District of New York had confirmed the plan of reorganization of the Johns-Manville Corporation ("Manville"). As part of the plan, the Bankruptcy Court had approved a settlement memorialized in an order

---

[3] *Espinosa* recognizes that there may be some very limited exceptions to the finality the plan pursuant to Fed. R. Civ. P. 60(b)(4). These rare exceptions include cases where the Bankruptcy Court did not have jurisdiction to enter the order confirming the plan and cases where a creditor's constitutional right to due process was violated via failure to receive actual notice of the bankruptcy filing or the plan. *Espinosa* at 1367-1377. Neither of these occurred in *Espinosa* or in the current case.

("1986 Order") whereby the Travelers Indemnity Company and related companies ("Travelers") would contribute funds to a trust established pursuant to the Manville Chapter11 plan to compensate those injured by asbestos produced by Manville. *Id.* at 2199. Travelers would in turn be released from any "policy claims" which would be channeled to the trust. *Id.* Despite the order and the confirmed plan, plaintiffs filed suits against Travelers on asbestos-related claims based on allegations that Travelers violated consumer protections statutes or common law duties imposed on Travelers. *Id.* at 2200. Travelers asked the Bankruptcy Court to enjoin these actions, and ultimately the parties settled.  Under the settlement, Travelers agreed to make payments to compensate the plaintiffs, so long as the Bankruptcy Court's 1986 Order was clarified to reflect that these actions were prohibited by the 1986 Order. *Id.* at 2201. The court made findings and ultimately entered an order providing that the 1986 Order barred the tort actions. *Id.* An appeal was taken, and the District Court affirmed on appeal. The Second Circuit reversed, holding that the Bankruptcy Court erred in enjoining the tort actions because those actions sought recovery from Travelers based on its own conduct unrelated to the debtor, and fell outside the scope of the Bankruptcy Court's jurisdiction. *Id.* at 2202-2203. On appeal, the Supreme Court found that the tort actions fell within the scope of the injunction contained in the 1986 Order. Once that finding was made, the Court could not undertake a further review of the 1986 Order, because to do so would constitute an impermissible review of a final order entered in connection with confirmation of Manville's plan. *Id.* at 2203.

The Supreme Court found that "once the 1986 Orders became final on direct review (whether or not proper exercises of bankruptcy court jurisdiction and power), they became *res judicata* to the 'parties and those in privity with them, not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter

which might have been offered for that purpose.'" *Travelers* at 2205 (quoting *Nevada v. United States,* 463 U.S. 110, 130(1983)(quoting *Cromwell v. County of Sac,* 94 U.S. 351, 352(1877))).  It was irrelevant whether the Bankruptcy Court had erred in 1986 because even if they had, all parties would be bound by the terms of the confirmation order regardless. "The finality of the Bankruptcy Court's orders following the conclusion of direct review generally stands in the way of challenging the enforceability of the injunction." *Id.* at 2198.

The Debtor's error in including ITT as a creditor and allowing ITT to participate in the confirmation process becomes unalterable after the time for objecting to the plan and appealing the final order of confirmation expires. *See also In re Kentucky Lumber Co.*, 860 F.2d 674 (6th Cir. 1988) (Unexpectedly large settlement proceeds that were received post-petition and  rendered the debtor solvent could not be used to pay unsecured creditors' post petition interest because the confirmed plan did not contemplate this outcome.); *Republic Supply Co. v. Shoaf*, 815 F.2d 1046, 1050 (5th Cir. 1987) (Provision of the confirmed plan which clearly discharged a third party guarantee should remain in force and could not be disregarded "regardless of whether that provision is inconsistent with the bankruptcy laws or within the authority of the bankruptcy court."); *In re Southwest Florida Heart Group, P.A.* 384 B.R. 311, 313 (M.D. Fla. 2008) (Post-confirmation insiders holding claims which were erroneously included in the wrong class pursuant to the plan could not challenge their classification because the confirmed plan expressly included such creditors in that class.).  Therefore, the Court is obligated to enforce the terms of the Plan and ITT is entitled to receive payment thereunder.

### *Conclusion*

For the forgoing reasons, ITT's Motion is denied.  However, ITT is entitled to receive the treatment proposed under the plan, which supersedes any pre-petition claim that ITT has against the Debtor.

An order consistent with this memorandum decision shall be entered forthwith.

Dated: Central Islip, NY
      August 10, 2010                By: ***/s/ Robert E. Grossman***
                                    Robert E. Grossman
                                    U.S. Bankruptcy Judge